**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No.: 1:20-CR-020-MRB** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **NICHOLAS J. VEERKAMP.** | : | **JUDGE MICHAEL R. BARRETT** |

### MOTION IN LIMINE AND NOTICE OF INTENT TO INTRODUCE OTHER ACTS EVIDENCE

Now comes the United States of America, by and through the undersigned counsel, and hereby provides notice to the Court and counsel of the government's intent to introduce evidence of uncharged conduct involving the molestation of children and other acts by Defendant Nicholas J. Veerkamp ("Veerkamp") that occurred prior to, contemporaneously with, or after the charged conduct. The government intends to introduce this evidence pursuant to Federal Rules of Evidence 414, 404(b), and as evidence that is inextricably intertwined with the charged offenses.

### PROCEDURAL BACKGROUND

Veerkamp is charged by way of a Superseding Indictment with a two counts of Sexual Exploitation of Children, in violation of 18 U.S.C. §§ 2251(a) and (e); one count of Receiving Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1); one count of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2); and one count of Penalties for Registered Sex Offenders, in violation of 18 U.S.C. § 2260A. Trial in this matter is scheduled for October 24, 2022.

1

**FACTUAL BACKGROUND**

I. **Charged Acts**

The offenses charged in the Superseding Indictment are based on the following facts that the government anticipates will be established at trial. On November 24, 2019, the Colerain Township Police Department (CTPD) received a walk-in complaint from R.M., who reported that on her boyfriend Nicholas Veerkamp's laptop, she found sexually explicit photos of a female juvenile (hereafter Minor Victim A). R.M. said Minor Victim A is depicted in the photos and is in the fourth grade. R.M. also said Minor Victim A is neighbors with Veerkamp's friend who resides in West Harrison, Indiana and is believed to be that friend's step-father's niece. After reporting the allegations, R.M. proceeded back to her residence and retrieved Veerkamp's laptop and turned it over to CTPD.

A federal search warrant was obtained for the laptop (an apple Macbook) and investigators with the Hamilton County Sheriff's Office – Regional Electronic Crimes Investigations (RECI) unit conducted a forensic exam of its contents. RECI's exam located a series of images at the following file paths: "Users/Nick/Documents/private/Photos(1)/" and "Users/Nick/Documents/private/Photos(1) 2/". The file folders include both explicit and non-explicit images of a prepubescent female who matched the likeness of R.M.'s description of Minor Victim A.[1] Of the numerous image files across various folders on the laptop, there were nineteen sexually explicit images of Minor Victim A that included exif data indicating a creation date of October 21, 2017.[2] The exif data also showed the images were created using a Motorola brand device with the model number XT1254. The explicit images depicted Minor Victim A

---

[1] Follow-up investigation identified Minor Victim A as L.C. who—at the time of the photos— was a nine-year-old girl who resided with her grandparent in West Harrison, Indiana.
[2] The series of sexually explicit photos of Minor Victim A were duplicated in various folders on the laptop which suggests they may have been uploaded to the laptop from the camera on more than one occasion.

2

asleep on a bed while a hand pulled down her pants and underwear to expose her genitalia. Most of the images only depict the lower torso of Minor Victim A (to include her exposed genitals) and a hand. However, some images do depict Minor Victim A's exposed genitals, her face, and the hand.

On January 23, 2020, Veerkamp was arrested on a federal complaint when he arrived at the CTPD to retrieve his laptop. Veerkamp had previously went to CTPD to inquire about his laptop. He left a note for the assigned detective providing his phone number and a description of the laptop. Upon arrest, officers photographed Veerkamp's hands for comparison to the photos taken of Minor Victim A. Veerkamp's Motorola brand cellphone was also seized and agents executed a federal search warrant at Veerkamp's parents' residence where he had been temporarily residing. Amongst other items, agents located a Sony CyberShot camera in the basement where Veerkamp resided and an SD card in the garage.

Law enforcement continued reviewing the electronic items seized during the investigation. Further examination of the laptop identified a series of sexually explicit and non-sexually explicit images of a 12-year-old girl, D.W. (hereafter Minor Victim C). The images were located in a folder using the following file path: "Users/Nick/Documents/private/photos (21)". From exif data, agents know those images were taken at approximately 11 p.m. on August 17, 2017 with the same Motorola brand device. The series depicts Minor Victim C's crotch while sleeping. A hand eventually slides her underwear to the side to expose her genitalia. While the photos do not depict Minor Victim C's face, her mother identified other aspects of the photo series (*i.e.* bed spread, mattress, clothing, etc).

Review of the SD cards from the garage revealed images of Minor Victim C taken in July of 2007 when she was only 2 years old. The series of images depict a hand pulling the

3

underwear of Minor Victim C to expose her genitalia. The SD card also contained pictures of Veerkamp as a teenager. Metadata from the images indicated they were taken with a Sony CyberShot camera, similar to the one found in Veerkamp's basement room. At the time the images were taken, Veerkamp would have been 15 years old.

Finally, further examination of the apple laptop revealed numerous images of a 16-year-old girl, B.F. (hereafter Minor Victim B). The images were located in various folders following the file path: "Users/Nick/Documents/private/". These images span various time periods and some appear to be screenshots captured from a cellphone. The image alleged in Count 4 of the Superseding Indictment depicts Minor Victim B spreading her exposed genitalia with her fingers. Data from the image indicates it was captured on July 25, 2017, shortly after an image depicting Minor Victim B's face was also captured. Notably, Veerkamp had a history with Minor Victim B. When she was between 12 and 14 years old (and Veerkamp was in his early 20's) the two began a sexual relationship spanning most of 2015. Veerkamp was ultimately arrested and indicted in Hamilton County Court of Common Pleas for three counts of Unlawful Sexual Conduct with a Minor in Case No. B1506021. Veerkamp plead to reduced charges of three misdemeanor counts of Sexual Imposition and sentenced to 3 years' probation with a 180-day suspended sentence. This conviction required Veerkamp register as a sex offender.

1. **The Minor Victims**

    a. **Minor Victim A**

Minor Victim A had a difficult upbringing. Her mother was sent to prison after drugs she acquired caused her and Minor Victim A's father to overdose. Her mother would survive the overdose but her father died. Her mother was subsequently sentenced to prison for her role in his death. During her mother's prison term, Minor Victim A began residing with her grandmother,

who lived next store to Veerkamp's friend in West Harrision, Indiana. Veerkamp would often come over to hang out with his friend and her cousin Minor Victim C. While she was too young to realize it at the time, Veerkamp was often inappropriate towards her. He would comment on her body and bring up topics involving sex. Further, Veerkamp gave her money and gifts. He also gave her a cellphone which he told her if anyone asked where she got it, to say she found it in the woods. Additionally, Minor Victim A recalls waking up in the middle of the night and seeing Veerkamp sitting in her room watching her sleep.

### b. Minor Victim B

Minor Victim B had a lengthy relationship with Veerkamp. She began associating with him when she was 12 or 13 years old and continued until she was 16 or 17 years old. Their relationship even continued after he was convicted of the charges in Hamilton County. She can identify herself in images found on Veerkamp's laptop and explained that Veerkamp requested sexually explicit images of her on a recurring basis beginning when she was 12 or 13 years old and continuing even after he was convicted in Hamilton County.

Minor Victim B explained that prior to Veerkamp's conviction—for approximately a one-year period—she would spend the weekends at Veerkamp's parents' house. Veerkamp would pick-up Minor Victim B and take her to his parent's house and sneak her into the basement. They would have sex and Veerkamp would offer her alcohol, marijuana, and pills. While she typically declined the alcohol and pills, Minor Victim B said that on a handful of occasions she could not recall what had happened the night before and did not feel normal the following day.

Minor Victim B also described instances where Veerkamp held a gun to her head. This occurred both when she tried to break-up with Veerkamp or did not want to have sex. Veerkamp would also show her a gun under the pillow of his bed to induce her to have sex with him.

### c. Minor Victim C

Veerkamp sought but never obtained a similar relationship with Minor Victim C. She explained that Veerkamp would text with her and share his Netflix login information. Veerkamp, however, made her uncomfortable because of the weird things he would say. He would call her pretty and comment on her body. Notably, during one text exchange[3] Veerkamp inquired about Minor Victim A and asked her to share his cellphone number with Minor Victim A. He also expressed an interest in Minor Victim A and made a statement about having to wait until Minor Victim A was old enough to start a relationship with him. Minor Victim C also observed Veerkamp and Minor Victim A interact. She saw Veerkamp photograph them while they were on a trampoline and Minor Victim A was only wearing a bra and shorts. She also described how Veerkamp would give money and gifts to her and Minor Victim A. Finally, Minor Victim A recalls a night where she woke up and felt that someone was looking up her dress, but she was uncertain if anyone else was in her room.

### LEGAL ANALYSIS AND ARGUMENT

The government now seeks a pretrial order to admit in its case-in-chief at trial the evidence described above. Minor Victim A and C's prior experiences with Veerkamp leading up to and occurring after the charged conduct provide the full context for Veerkamp's crime and are, therefore, "inextricably intertwined" with the charged offense and admissible on that basis. Federal Rules of Evidence 414 likewise support the admission of Veerkamp's child molestation

---

[3] As they contain identifying information of the Minor Victims, a printout of the text messages will be submitted separately to defense counsel & chambers.

of Minor Victim B and C. Finally, Rule 404(b) permits admission of the proposed evidence because it is relevant to Veerkamp's knowledge, motive, intent, and plan or *modus operandi*, and is not unfairly prejudicial.

**I. Veerkamp's interactions and relationship with the minor victims are admissible as relevant *res gestae* evidence.**

The contents of the laptop, SD card, and Veerkamp's interactions and relationship with the minor victims do not fit within the legal theory of "other acts" evidence because those acts are "necessary to complete the story of the charged offense" and are "inextricably intertwined" with evidence of that charged offense. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (citing *United States v. Weinstock*, 153 F.3d 272, 277 (6th Cir. 1998)). Evidence of those interactions are, in fact "direct evidence of the crime." *United States v. Carson*, 870 F.3d 584, 599 (7th Cir. 2017). *See also United States v. Barnes,* 49 F.3d 1144, 1149 (6th Cir. 1995); *United States v. Townsend*, 796 F.2d 158, 162 (6th Cir. 1986). Such background or *res gestae* evidence is admissible if it is "a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Hardy*, 228 F.3d at 748 (internal citation omitted). This evidence is admissible, not because it falls outside of Rule 404(b)'s propensity bar, but because it "put[s] the charges in the appropriate context." *United States v. Gibbs*, 979 F.3d 416, 424 (6th Cir. 2015). Given the importance of context, "defendants are not entitled to a 'sanitized' recounting of the facts, and prosecutors are not restricted to proving only discrete elements of a crime in such a way that they would be unable to offer the jury a natural narrative of events." *Gibbs*, 979 F.3d at 424 (internal citations omitted).

Here, the contents of the laptop, SD card, and interactions between Veerkamp and the minor victims that predate the charged conduct constitute *res gestae* or relevant contextual

7

evidence of the crimes charged. The historical background of the minor victims' relationship with Veerkamp is inextricably intertwined with the facts underlying the charged conduct in this case. Veerkamp did not just create or obtain sexually explicit photos of three random minors. Rather, the acts he engaged in – taking sexually explicit photos of Minor Victim A and C while they slept and receiving sexually explicit photos from Minor Victim B – were a result of many months of interactions with the Minors. Indeed, given the conduct described by Minor Victim's A and C, the history of their relationship with Veerkamp is properly seen as his grooming of them to engage in the sexually explicit conduct. *See United States v. Fox*, 600 Fed. Appx. 414, 419 (6th Cir. 2015) (describing "grooming" as "a variety of behaviors that appear calculated to prepare a child for a future sexual encounter"). The details of their relationship and the comments Veerkamp would make to them about their body and sex are all directly probative to his efforts to persuade them to engage in sexually explicit conduct. Indeed, his actions with Minor Victim B went far beyond grooming and included continuous sexual acts.

The story of the offense and the Minor Victims testimony would be incomplete without the historical context of their relationship. Likewise, how these images came to be on the laptop and SD card would be incomplete without placing them in context with the other items on the devices. Thus, the jury should be permitted to have a full understanding of how the offenses charged in the Superseding Indictment came to pass and the development, details, and circumstances of the Minor Victims relationship with Veerkamp is integral to such an understanding.

## II. Contemporaneous Non-Sexually Explicit Images Are Admissible

Amongst the sexually explicit images Veerkamp produced are other non-sexually explicit photos and videos. In particular, Veerkamp's laptop contained various photos of the Minor

8

Victims, often in the same folder, taken with the same Motorola device mere moments before or after the sexually explicit photos alleged in the indictment were taken.

For instance, Veerkamp took numerous photos of Minor Victim A and C while they slept before he ultimately pulled down their underwear to expose their genitals. Further, that same day Veerkamp took videos and photographs of Minor Victim A and another minor as they jumped on a trampoline and played around a fire. Veerkamp's voice can be heard in the videos and he routinely focuses the camera on Minor Victim A's buttock and privates, even chastising the other minor who gets in the way of the camera. Likewise, he had photos of Minor Victim B depicting her face moments before he received the sexually explicit image of her. These additional non-sexually explicit photos and videos of the minor victims were not only recorded near in time to the offense with the same brand device, they placed Veerkamp with the Minor Victim mere hours before the offense occurred, and can help identify the Minor Victim in the sexually explicit photos. Hence, these images are direct evidence of the crime and arise from the same events of the charged offenses. *Hardy*, 228 F.3d at 748.

Moreover, these other images are appropriate in helping the jury determine Veerkamp's intent and whether the images of Minor Victim A and C are a lascivious depiction of a minor intended or designed to elicit a sexual response in the viewer. *See* Sixth Circuit Pattern Jury Instruction 16.01(2)(D)(v) (explaining "lascivious exhibition of the genitals or pubic area"). In making this portion of the "lascivious" determination, the Sixth Circuit explained in *United States v. Brown*, 579 F.3d 672 (6th Cir.2009) the factfinder may consider the "limited context" in which the images were taken, such as "(1) where, when, and under what circumstances the photographs were taken, (2) the presence of other images of the same victim(s) taken at or

9

around the same time, and (3) any statements a defendant made about the images." *Brown*, 579 F.3d at 683–84 (footnote omitted).

Here, Veerkamp took numerous non-sexually explicit photos of Minor Victim A and C prior to and after the alleged sexually explicit images. This is evidence of his intent to capture a lascivious depiction of the Minor Victims intended to elicit a sexual response. Stated another way, Veerkamp took photos of the girls sleeping but they failed to evoke the sexual arousal he sought, so he pulled down their underwear exposing their genitals and took additional photos. Indeed, comparing the non-sexually explicit photos of the Minor Victims sleeping next to the photos where Veerkamp pulls down their underwear is a valid "comparison exercise, probative of intent under the sixth *Dost* factor [and] 'can help factfinders ... resolve ... whether an image inadvertently focuses on a child's genitalia, or whether it is intended to elicit a sexual response in the viewer.'" *United States v. Stewart*, 729 F.3d 517, 529 (6th Cir. 2013) (internal cite omitted).

**III. Veerkamp's prior child molestations are admissible under Federal Rules of Evidence 414.**

Federal Rules of Evidence 414 provides an exception to the general rule that a defendant's prior bad acts may not be introduced to show his propensity to commit the charged offenses. Rule 414(a) provides that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation," which "may be considered on any matter to which it is relevant." Fed. R. Evid. 414(a). "Child" is defined as any person under the age of 14. Fed. R. Evid. 414(d)(1). "Child molestation" includes charged or uncharged criminal conduct under state or federal law involving "contact between any part of the defendant's body – or an object – and a child's genitals or anus" and "contact between the defendant's genitals or anus and any part of a child's body." *See* Fed. R. Evid. 414(d)(2). Child molestation specifically includes any conduct

10

prohibited under Chapter 109A that is committed against a child, and conduct prohibited under Chapter 110 of Title 18 of the United States Code. *Id*.

This rule enables the Court to admit evidence of a defendant's other acts to prove the defendant has a character or propensity to molest children or commit sexual assaults. As the Sixth Circuit recently explained:

> In most criminal cases, the prosecution cannot argue that a defendant is guilty of the charged offense because he committed similar acts in the past. But child-molestation cases are different. Under Federal Rule of Evidence 414(a), a court may admit evidence that a defendant previously molested a child to show that he is inclined to molest children. Rule 414(a)'s only express limitation is that the evidence must be offered on a relevant matter.

*United States v. Hruby*, 19 F.4th 963, 965 (6th Cir. 2021)

Rule 414(a) evidence "is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Hruby*, 19 F.4th at 966-67 citing *Huddleston v. United States*, 485 U.S. 681, 689, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). When making this relevancy determination for the prior child molestation, the trial court does not decide if the defendant committed the act or even if the child molestation occurred. *Id*. Rather, the court only "examines all the evidence in the case and decides whether the *jury* could reasonably find the conditional fact ... by a preponderance of the evidence." *Id*. at 967 (emphasis in original) (citation omitted).

This is because the Sixth Circuit has reasoned that "Rule 414 itself was a 'strong legislative judgment that evidence of prior sexual offenses' have probative value and 'should ordinarily be admissible.'" *United States v. Deuman*, 568 Fed. Appx. 414, 420 (6th Cir. 2014) (quoting *Gabe,* 237 F.3d at 959). Similarly, in *United States v. Seymour*, 468 F.3d 378 (6th Cir. 2006), the Court relied, in part, on the important purposes of the Rules to uphold the admission

11

of other sexual crimes evidence: "Rules 413 and 414, enacted in 1995, were designed to protect the public from crimes of sexual violence by permitting in sexual assault and child molestation cases . . . evidence that the defendant has committed offenses of the same type on other occasions." *Id*. at 384-385 (internal citations and quotation marks omitted). The propriety of admitting evidence of prior and/or uncharged sexual offenses has continued to be upheld by the Sixth Circuit in recent years, and other circuits have repeatedly made similar findings. *See United States v. Hruby*, 19 F.4th 963, 966 (6th Cir. 2021) ("Under the rule's plain terms then, evidence that a defendant previously molested a child may be admitted in a criminal case if he is accused of child molestation and it is offered on a relevant matter.); *United States v. Batton,* 602 F.3d 1191, 1196 (10th Cir. 2010) (Rule 413 provides an exception to Rule 404's prohibition of propensity evidence); *United States v. Guidry*, 456 F.3d 493, 501 n.2 (5th Cir. 2006) ("Rules 413, 414, and 415 provide exceptions to the general prohibition on character evidence in cases involving sexual assault and child molestation."); *United States v. Kelly*, 51 F.3d 433, 436-437 (4th Cir. 2007) ("Unlike Rule 404(b), Rule 414 allows the admission of evidence for the purpose of establishing propensity to commit other sexual offenses. In allowing this evidence, Rule 414 reflects Congress's view that this propensity evidence is typically relevant and probative.") (internal citations and quotation marks omitted).

      Veerkamp's prior molestation of Minor Victim B falls squarely within the rules. First, his propensity bears on the charged offenses because it provides the motive for his actions in the instant case and shows that he has been willing to repeatedly break the law in order to fulfill his illegal sexual desires. *See United States v. Hall*, 202 F.3d 270, 2000 WL 32010 *3 (6th Cir. 2000) ("Hall's prior conviction for the sodomy and sexual abuse of a young boy also creates the logical inference that he has a sexual interest in children that is strong enough to cause him to

break the law."). Further, he solicited and received sexually explicit images from Minor Victim B – similar to the images he's charged with creating of Minor Victim A and C. Second, there is ample evidence for the jury to find Veerkamp committed the prior child molestation of Minor Victim B. Aside from Minor Victim B's own testimony[4] about their continuous sexual acts, Veerkamp's laptop possessed numerous images of Minor Victim B in various states of undress. Further, Veerkamp was ultimately convicted of 3 counts of Sexual Imposition for his involvement with Minor Victim B.

Likewise, that Veerkamp took sexually explicit photos of Minor Victim C when she was two-years old and he was 15 years old is admissible. First, the propensity and relevance of these images is inherent: they are photos depicting Minor Victim C's gentiles while she slept taken by Veerkamp 10 years prior. The only difference between these photos and those contained in Count 2 is Minor Victim C's age. Second, there is plenty of evidence for the jury to find by a preponderance that Veerkamp committed the act as the photos were found on an SD card at his house. Other photos of Veerkamp were on the SD Card and the photos were taken by a Sony CyberShot camera – the same make and model found in Veerkamp's basement room. With ample evidence the prior child molestations occurred, the prior instances of Veerkamp's child molestation of Minor Victim B and C are admissible.

### IV. Rule 404(b) permits introduction of evidence of Veerkamp's other acts relevant to prove knowledge, motive, intent, and modus operandi.

Even if all of the evidence and testimony described above were not admissible as contextual direct evidence or pursuant to Rule 414, Rule 404(b) permits the admission of the evidence for

---

[4] Rule 414(a) does not have a corroboration requirement. *Hruby*, 19 F.4th at 967. Hence, the uncorroborated testimony of the victim alone is enough evidence for the jury to find Veerkamp committed the acts.

several non-propensity reasons.[5] In particular, there are hundreds of images of Minor Victim A on the laptop. There are also many private videos and images of Veerkamp (e.g. selfies of Veerkamp, videos of Veerkamp masturbating while driving, a video of a dog licking what appears to be Veerkamp's genitals, a video of a male matching Veerkamp's likeness masturbating to children's underwear)[6]. Additionally, Veerkamp engaged in a text and other conversations with Minor Victim C wherein he discussed his desire for Minor Victim A. This occurred after the charged images of Minor Victim A were taken. Should the Court not find this evidence admissible as res gestae evidence, it would still be admissible as other act evidence.

Rule 404(b) prohibits introduction at trial of evidence of other crimes or wrongful acts "to prove the character of a person in order to show action in conformity therewith." But "other acts" evidence is admissible for *any other* relevant, non-propensity reason, including to prove motive, opportunity, intent, knowledge, identity, and so forth. The Sixth Circuit regularly upholds the admission of other acts evidence under Rule 404(b), where the evidence is not introduced to show the defendant's propensity or general bad character. *See*, *e.g.*, *United States v. Bell*, 516 F.3d 432 (6th Cir. 2008); *United States v. Johnson*, 27 F.3d 1186 (6th Cir. 1994). Importantly, Rule 404(b) is a rule of "inclusion rather than exclusion, since only one use [of prior bad acts] is forbidden and several permissible uses of such evidence are identified." *United States v. Vance*, 871 F.2d 572, 575 (6th Cir. 1989). *See also United States v. Cummins*, 969 F.2d 223, 228 (6th

---

[5] The fact that the other acts evidence could be used to establish propensity, does not bar its use for an alternative non-propensity purpose. "[R]ather, Rule 404(b) excludes the evidence if its relevance to another purpose is established *only* through the forbidden propensity inference." *Carson*, 870 F.3d at 598.

[6] The government intends to prove the laptop was Veerkamp's and he used it to store his personal and private files. This can be accomplished through the testimony of witnesses and the laptop's contents. While we do not intend to introduce in our case and chief the videos of Veerkamp masturbating or having his genitals licked by a dog, we merely note (as explained below) that should Veerkamp argue or assert the laptop is not his or make any assertion it was a repository for others, the probative value of these videos greatly increases and the United States reserves the right to seek those videos admission.

14

Cir. 1992) (same). Thus, the Rule's list of admissible purposes for evidence of other bad acts is illustrative, not exhaustive. *United States v. Blakeney*, 942 F.2d 1001, 1018 (6th Cir. 1991).

The Sixth Circuit has "overwhelmingly approved of the admission of 'other acts evidence' when identity is a material issue." *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006); *see*, *e.g.*, *United States v. Keith*, 502 F. App'x 453, 455 (6th Cir. 2012) (affirming the admission of prior convictions to "show that [defendant] was the individual responsible for the child pornography found on the computer"). Here, identity is unquestionably at issue. First, Veerkamp's face is not depicted in any of the sexually explicit images he's alleged to have produced. Second, he was not caught in possession of the laptop or SD card where child pornography was found. Thus, he's likely to assert someone else may have stored those images on the laptop and SD Card or deny those items belong to him. Other acts evidence, which may include the contents of the laptop, are admissible to establish Veerkamp is responsible for the child pornography on the computer.

The Sixth Circuit outlined three steps to assessing admissibility of "other acts" evidence under 404(b):

> First the district court must decide whether there is sufficient evidence that the other act in question actually occurred. Second . . . the district court must decide whether the evidence of the other act is probative of a material issue other than character. Third . . . the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003).

Similar to Rule 414, other acts only require proof that "the jury can reasonably conclude that the act occurred and that the defendant was the actor." *United States v. Carney*; 387 F.3d 436, 452 (6th Cir. 2004) (quoting *Dowling v. United States*, 493 U.S. 342, 348 (1990)).

As to the first step, the images and videos are on the laptop and depict Veerkamp so the jury can easily conclude the acts occurred and Veerkamp was the actor. For the second step, such personal and private photos and videos also saved to the laptop clearly establishes Veerkamp's identity as owner of the laptop and its contents.

Further, the nature of the sexually explicit images on the laptop – young girls privates exposed while asleep - shows a *modus operandi* in how Veerkamp was sexually aroused. "Evidence of *modus operandi* is evidence that shows a defendant's distinctive method of operation." *Carson*, 870 F.3d at 599. Such evidence is "not excludable under Rule 404(b) of the Federal Rules of Evidence." *United States v. McGuire*, 627 F.3d 622, 626 (7th Cir. 2010). Veerkamp had a distinct type of pornography image he liked – young girls privates exposed. That laptop has many such images, few if any rising to the level of child pornography. However, they do establish Veerkamp's *modus operandi* as they are similar to the images he's alleged to have produced of Minor Victim A and C.

For the text messages with Minor Victim C, they were saved to her cellphone from Veerkamp's number which satisfies the burden of establishing the jury could conclude the act occurred and the defendant was the actor. The conversation is relevant to Veerkamp's knowledge, motive, and intent in relation to the charged offenses. First, he expresses a sexual desire for a child (Minor Victim A) to another child (Minor Victim C). This shows both his sexual interest in minors and his motive for wanting sexually explicit photos of Minor Victim A. *See United States v. Delaney*, 443 Fed. Appx. 122, 131-132 (6th Cir. 2011) (in trial for production, distribution, and possession of child pornography, evidence of defendant's uncharged chats with undercover officers, in which he discussed his sexual interest in young girls and his prior possession and production of child pornography, was probative of identity,

16

knowledge, intent, and absence of accident or mistake); *United States v. Woods*, 684 F.3d 1045, 1065 (11th Cir. 2012) (evidence of prior molestation "was probative of [the defendant's] interest in child pornography and therefore made it more likely that [the defendant], and not his ex-wife or roommates, was responsible for the child pornography found on the two computers").

Finally, if any unfair prejudice could result from introduction of this evidence, it could easily be cured by a limiting instruction. *United States v. Haywood*, 280 F.3d 715, 724 (6th Cir. 2002) ("a limiting instruction will minimize to some degree the prejudicial nature of evidence of other criminal acts".) Aside from the videos of Veerkamp masturbating etc., most if not all of this evidence poses no unfair prejudice. Much of the contents of the laptop are not unlawful, yet are probative to establish Veerkamp's ownership of the laptop and demonstrate what sexually arouses him. Additionally, the Veerkamp's conversation with Minor Victim C is probative of his intent as it is his own statement expressing a desire for a relationship with Minor Victim A. Accordingly, any unfair prejudice from the introduction of this evidence can be adequately addressed with a limiting instruction.

## CONCLUSION

For the foregoing reasons, and multiple legal theories, the government respectfully submits that evidence regarding Veerkamp's prior child molestation and other acts are admissible in the government's case-in-chief.

                                            Respectfully submitted,

                                            KENNETH L. PARKER
                                            United States Attorney

                                            s/*Kyle J. Healey*
                                            KYLE J. HEALEY (083794)
                                            JENNIFER WEINHOLD (KY 93304)
                                            Assistant United States Attorneys
                                            221 East 4th Street, Suite 400

Cincinnati, OH 45202<br>
Phone No.: (513) 684-3711<br>
Fax No.: (513) 684-6710<br>
Email: KHealey@usa.doj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served this 16th day of September, 2022 electronically upon all counsel of record.

s/<i>Kyle J. Healey</i><br>
Kyle J. Healey<br>
Assistant United States Attorney